Williams *et al. vs.* Allen, executor, &c.

No. 15.—JANE L. WILLIAMS and others, plaintiffs in error, *vs.* ALEXANDER A. ALLEN, executor, &c. defendant in error.

[1.] K W by deed of gift conveyed certain negro slaves to a trustee for "the use, &c. of J .W and the heirs of her body, if any," and further provided, that "in the event that my said daughter J should die without child or children, then I devise the above property to be divided among my brothers and sisters:" *Held*, that the words " child or children," as here used, are words of purchase, and that the whole provision, " in the event that my said daughter J should die without child or children then," &c. being words explanatory, modifies the technical effect of the preceding gift to "J W and the heirs of her body," and authorizes the inference that the words "heirs of the body" were used by the grantor to designate certain individuals answering the description of children at her death, and not as words of limitation : *Held*, also, that J W took an estate for life only in said slaves.

[2.] Where the words used in a deed were not appropriate to the creation of

a separate estate in J W in certain slaves therein conveyed, free from the marital rights of any husband whom she might marry. But if upon the intermarriage of J W with A A W the latter received said property as his wife's separate estate, and always treated it as such, and in his will recited, that in consideration of her possessing the same as a separate estate, he made no other provision for her: *Held,* that his executor was estopped to deny the separate estate of the wife in the same, and its liability for her debts, so far as the claims of her creditors were concerned, who had subsequently to the publication of the will, given her a credit upon the faith of said separate estate.

[3.] In a proceeding by bill in Chancery, for instruction and direction, filed by the executor of A A W in which he alleges that his testator had been mistaken in his legal rights, when he referred his wife to said property, as her separate estate, and treated it as such in his will; and praying that the same might be corrected: *Held,* that an executor is not bound by such a recital in the will, if it were made under a mistaken apprehension by the testator. But that in this case the testator did, by mistake, what in equity and good conscience he should have done, and such a mistake a Court of Equity will not correct.

In Equity, in Decatur Superior Court. Decided by Judge PERKINS, December Term, 1854.

In 1836, Mrs. Kessiah Wood executed a deed, conveying certain negroes to James H. Truluck, in trust—1st. For the use of the grantor during her natural life, "then to and for the use and benefit of my daughter, Jane Wood, and the heirs of her body, if any; and in the event that my said daughter Jane should die without child or children, then I desire the above property to be divided between my brothers and sisters," &c. Jane Wood afterwards intermarried with A. A. Williams, who received the property as the separate estate of his wife, and treated it as such so long as he lived, and in his will included the following item. " I will and bequeath to my beloved wife Jane, my two carriage horses and family carriage. This is all I give her, she having a separate estate, amply sufficient for her maintenance". After the death of her husband, Mrs. Williams contracted debts on the faith of this estate, and gave a mortgage on a portion of the property.

After the death of Williams, Alexander A. Allen, as his executor—filing a bill, alleged the foregoing facts, and pray-

ed the direction .of the Court, and the construction of this deed; and in the meanwhile, enjoining the creditors of Mrs. Williams from proceeding against this property.

Upon the coming in of the answers, a motion was made to dissolve the injunction and dismiss the bill, for want of equity. The Court refused the motion. Exceptions were filed to that decision, and the questions argued in this Court depend entirely upon the construction of the deed, and the effect of the subsequent acts of Williams, as charged in the bill.

R. SIMS, for plaintiff in error.

R. F. LYON, for defendant in error.

*By the Court.*—STARNES, J. delivering the opinion.

[1.] The gift to the trustee, in this case, "for the use, &c. of Jane Wood, and the heirs of her body, if any" is in such terms as will pass an estate tail, by the Statute *De donis conditionalibus*, &c. unless there is something else in the instrument, to show that the giver used the words *heirs of the body*, to designate certain individuals answering the description of *children or heirs, at the death* of her daughter.

It is the well settled doctrine of all the modern cases, that the words *heirs of the body*, may be construed as words of purchase, whenever there is anything in the instrument which shows that they were used to designate certain persons answering the description of heirs, at the death of the party. (*Doe vs. Colyear*, 11 *East.* 548. *Doe vs. Jesson*, 2 *Bligh*, 2. *Doe vs. Harney*, 4 *B. & C.* 610.)

In our opinion, such explanatory words are found in this deed, and in the immediate context: for the grantor goes on to provide, that "*in the event* that my said daughter Jane *should die without child or children, then* I devise the above property, to be divided," &c.

Now if these terms had to be construed in England, or by those rules of construction which favor the interests of the heir

at law, we grant that the signification of the words "*children*," here, would probably be controlled by the use of the words "heirs of the body," in the former part of the sentence: and this, although the word " children" is appropriately a word of purchase. But this construction would proceed upon the principle which has influenced the English Courts, by construction to deprive the words "dying without issue," or "dying without heirs," of their natural signification, viz: a dying without issue *at the death,* and to hold that they import *an indefinite failure of issue ;* which principle is, according to Mr. Lewis, in his treatise on Perpetuities, that, "in all cases of doubt in regard to the construction of limitations, that is to be preferred which most favors the interests of the heir at law." (*Lewis on P.* 191.) This is the reason, therefore, why the word " children," as a word of purchase, in such context, would be controlled by the words "heirs of the body," unless there was something else in the instrument to forbid it.

But, as we have said in the case of *Harris, administrator, vs. William Smith,* decided at the last term of this Court held in Savannah, this reason has been, in effect, repealed by the Legislature of Georgia, when primogeniture was abolished, and real and personal estate put upon the same footing, as to distribution, and estates tail prohibited. And if the reason has been repealed, the rule should no longer exist.

If the reason for such constructions be repealed, why should a Court, in this State, continue to perplex itself by wandering up and down the labyrinth of uncertainty which has been created by the English Courts; which, at one time, have been influenced by this reason, and have decided accordingly, even against the plain meaning of simple words; and at another, considering rather the interests of credit and commerce, have leaned so violently against it as to resort to trifling subterfuges in order to avoid its controlling effect? Why, where it may properly and reasonably be avoided, shall we persist in walking in the thick fog which has been thus created, when we may advance into the clear light and atmosphere of our own laws and policy ?

It is in this point of view that we arrive at the conclusion, that when in the year 1836, in the State of Georgia, this grantor employed the word " children" in this instrument, she designed to use it in its natural sense, as a word of purchase, and that we must so receive it.

If so, we find the maker of this deed, in the use of the words, " in the event that my said daughter should die without child or children," having reference to her daughter's dying without children at her death ; that is, living at her death. In such event, she could not have intended a perpetuity : and if not, she had not in her mind, at the time, an indefinite failure of her daughter's issue, as she most probably would have had, if she had designed to create an estate tail in her daughter, by the use of the words " heirs of the body." And hence, the inference is, that she did not intend such estate in the first instance, and that she used the words " heirs of the body," to designate certain individuals answering the description of children, at the death of her daughter.

But if she intended this property to pass 'to any children whom her daughter might leave at her death, and in the event that she should leave no children at her death, that it should be divided among her brothers and sisters, in such case, she could not have intended that daughter to take any thing more than a life estate in the property. And this, no doubt, was her intention.

[2.] The next question raised is, whether or not the life estate of the daughter, in this case, (Mrs. Williams, formerly Miss Wood,) was a separate estate, not subject to the marital rights of her husband.

We cannot sanction the position, that the words used were sufficient to create a separate estate in this property. But it appears that it was treated as her separate estate, by the husband and wife, during the coverture and at the time of his death, or of the execution of this will ; and an interesting question is raised, whether or not, under the circumstances, his representative is not estopped to deny this.

The executor, Alexander Allen, Esq. comes here alleging,

that as he has reason to believe, his testator acted under a mistake as to his legal rights, during his life, in treating this property as his wife's separate estate ; and he prays that such mistake may be corrected—at the same time submitting himself to the directions of the Court, and avowing, what he no doubt feels, a desire to do nothing but his duty in the premises.

We have not had a moment's hesitation in perceiving, that so far as the interests and rights of the creditors are concerned, (who are represented here,) this executor can have no benefit from any such mistake by his testator; that as to them he must be estopped to deny the separate estate of the wife. These debts were contracted subsequently to the death of the testator, and the legal presumption is, upon the faith of this property, to which Mrs. Williams had been distinctly referred by the will, as her separate estate. Her creditors had a right to look to it as hers, and not as belonging to her husband's estate, after his will was published, and it would be a great wrong on them, if the executor were now allowed to set up title to it. If the testator were ignorant of his rights, as is alleged, he should have taken steps to have informed himself in relation to them, before he made and published his will, and invited persons, as he has done, to credit her who had been his wife, upon the strength of this property. If he did not take the proper steps to be advised, it was gross negligence, for which these creditors should not be made to suffer. And an estoppel *in pais*, though not applying in cases where there has been a mistake without fault, yet does apply where there has been gross negligence equivalent to fraud. (1 *Story's Eq.* §§386, 391. *Brewer vs. Bos. & W. R. R. Co.* 1 *Met.* 483.)

[3.] We incline strongly to think, also, that as between the wife and this husband's executor, the latter, in a Court of Equity, should be held to the admissions made in the will, notwithstanding they may have been influenced by mistake.

It will not be denied, that if the trustee in this case, upon the intermarriage of Miss Wood with the defendant's testator, had invoked the interference of a Court of Equity, and asked a settlement of this property upon his *cestui que trust*, that

Williams *et al. vs.* Allen, executor, &c.

such a settlement would have been decreed.    Well then, when the husband married, and when he executed his will and died, referring his wife to this property and setting it apart as her separate estate, he did what was equitable and just, and what confessedly a Court of Equity would have done, if it had been asked.    It was not a *legal* settlement, but should it not be sustained in Equity?    And now, when it is necessary for the executor to seek a Court of Equity, in order to have his testator's mistake corrected, should not that Court do what was equitable, and secure the property to the wife?

But there is a stronger reason why this should be done in this particular case.    By his will, the testator makes no provision for the wife's maintenance; in effect, assigning as a reason that she was possessed of this separate estate.    His words are, "I will and bequeath unto my beloved wife, my two carriage horses and family carriage; this is all I give her, she having a separate estate amply sufficient for her maintenance." It is to be inferred, that if he had not considered and treated this property as hers, he would have made some other provision for her.    And it will be, indeed, a case of great hardship, if she is to be deprived of this.

Ought a Court of Equity to permit this hardship, if it have the right in any way to interfere?    It has that right—for this bill is brought to correct a mistake of the law by the testator. This can be done by a Court of Equity only on equitable principles.

It is true that the recitals in a will by a testator, in which he erroneously states title to be in a third person, which, in fact, belongs to himself, do not amount to a devise or bequest of said property by the will.    And this is so, even though it may appear that the testator was influenced in the disposition of his property by the mistake.    (*Wright vs. Wyvil,* 1 *Vent.* 56.  *Wright vs. Hammond,* 1 *Strange,* 447.   1 *Com. R.* 231. 2 *Eq. Ca. Abr.* 338.)    This is undoubtedly a correct position. But this is a different case from that before us, where that title which the testator recites as being in his wife, in equity and good conscience should have been there, or would have

been there conveyed, if a Court of Equity had been asked so to convey it. And where, in such a case, the testator's representative appeals to a Court of Equity to correct the mistake made in this recital, if the Court thus takes jurisdiction of the matter, it should decree according to the equities of the parties.

It only remains to say that the judgment of the Court below is affirmed, and that in our opinion a decree should be entered in accordance with the views we have expressed, for the protection of all the interests at stake in this case—care being taken to require bond and security of all persons who may purchase the life interest of Mrs. Williams in this personal property, when it is sold in payment of her debts, that the same shall be forthcoming at her death, to answer the demands of those persons who are entitled to the property after her death.